Following a jury trial in the Superior Court, the defendant was convicted of armed robbery while masked, armed assault in a dwelling, and armed burglary. On appeal, the defendant claims two errors at trial created a substantial risk of a miscarriage of justice: (1) the prosecutor inaccurately predicted in his opening statement that a witness would identify the defendant by voice; and (2) the judge erred in admitting in evidence a photograph obtained from the defendant's Facebook page. The defendant also argues that trial counsel was constitutionally ineffective when he failed to object or request curative instructions with respect to each claimed error. We affirm.
Background. We summarize the relevant facts. The victims, Christina Cardoza and her boy friend Rodney Santos, were awakened in the middle of the night by three masked men standing over their bed screaming at them. One pointed a firearm in their direction. Another had a crowbar. The man with the crowbar acted as the leader and asked, "Where's the money? I know you have stuff here .... Where's the drugs?" The victims were terrified and directed the intruders to items of value. The masked men rummaged through the house and took (among other things) a guitar, an X-Box gaming system, and $2,000 in cash from a safe. Cardoza told the men where to find her debit card and gave the man with the crowbar her personal identification (PIN) number.
The defense at trial was that the evidence was insufficient to prove the defendant's identity beyond a reasonable doubt. While there was no direct eyewitness identification testimony, the Commonwealth presented the following circumstantial identification evidence. The robber with the crowbar wore a black ski mask and black hooded sweatshirt with a "Champion" logo. His exposed skin was dark. A surveillance video, which was played for the jury, showed a man with dark skin using Cardoza's debit card and PIN number to withdraw cash from a nearby automatic teller machine (ATM) shortly after the robbery. That ATM was "[n]ot too far" from the defendant's residence. The man in the surveillance video was wearing a dark hooded sweatshirt with a Champion logo. When the defendant was arrested at his residence, he asked to bring a sweatshirt with him. It was a black hooded Champion sweatshirt. Cardoza described the hooded Champion sweatshirt worn by the man in the surveillance video as similar to the one worn by the robber with the crowbar.
Cardoza found a photograph of a dark skinned man wearing a mask on the defendant's Facebook page. She described the mask and skin color in the photograph as "almost identical" to the robber with the crowbar. Finally, the evidence showed that the defendant was related to Santos and was familiar with the residence, having been there before.
Discussion. 1. Opening statement. In his opening statement, the prosecutor told the jury, "And you're going to hear that ... Santos ... goes back to the police and tells them that he recognizes the voice of the ringleader as Donte Reed this defendant before you." At trial however, Santos testified only that he "[p]ossibly" recognized the voice of one of the robbers. The judge prohibited Santos from making an in-court voice identification of the defendant. Further, she immediately cautioned the jury: "[Y]ou can't decide anything in this case based on mere possibility. A witness may testify as to their recollection, but not as to whether simply something's possible." The defendant claims that the prosecutor's inaccurate prediction of a voice identification in his opening statement so prejudiced him as to create a substantial risk of a miscarriage of justice. We disagree.
"The prosecutor could state in [his] opening statement anything [he] reasonably, and in good faith, expected to prove." Commonwealth v. Qualls, 440 Mass. 576, 586 (2003), citing Commonwealth v. Errington, 390 Mass. 875, 883 (1984). "Absent a showing of bad faith or prejudice ... the fact that certain evidence fails to materialize is not a ground for reversal." Qualls, supra. Here, the defendant does not claim the prosecutor acted in bad faith. At argument, defense counsel acknowledged that the grand jury minutes contain testimony supporting the prosecutor's expectation that Santos would testify that he recognized the defendant's voice. Indeed, the defendant's trial counsel also anticipated a positive voice identification. There was no error. See Commonwealth v. O'Connell, 438 Mass. 658, 668-669 (2003).
2. The Facebook photograph. While conducting her own investigation, Cardoza observed a photograph that had been posted on the defendant's Facebook page. The photograph depicted a dark-skinned man wearing a mask. The defendant claims error in the admission of the photograph in evidence. Because there was no objection, we review any error for a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 17 (1999) ; O'Connell, supra at 668.
We disagree with the defendant's contention that the photograph was not probative because the Commonwealth failed to establish that it was a photograph of the defendant or that he had posted it. At trial, Cardoza compared the appearance of the man in the Facebook photograph to the appearance of the robber with the crowbar. She testified that the skin color and mask were "almost identical," and the photograph "appear[ed] to be a fair and accurate depiction of the individual [she] saw in the house." Cardoza identified the photograph as the same one that she saw on the defendant's Facebook page. Together, this evidence certainly had a tendency to prove that the defendant participated in the crime.
We are more troubled by the defendant's argument that the Facebook photograph was not properly authenticated. "[P]roof of authenticity usually takes the form of testimony of a qualified witness either (1) that the thing is what its proponent represents it to be, or (2) that circumstances exist which imply that the thing is what its proponent represents it to be." Commonwealth v. LaCorte, 373 Mass. 700, 704 (1977) (quotation omitted). See Mass. G. Evid. § 901(a) (2017). "The role of the trial judge in jury cases is to determine whether there is evidence sufficient, if believed, to convince the jury by a preponderance of the evidence that the item in question is what the proponent claims it to be. If so, the evidence should be admitted, if it is otherwise admissible." Commonwealth v. Purdy, 459 Mass. 442, 447 (2011), quoting from Brodin & Avery, Massachusetts Evidence § 9.2, at 580 (8th ed. 2007). Here the photograph was authenticated only to the extent the Commonwealth contended that it was a photograph that appeared on the defendant's Facebook page; the Commonwealth failed to establish by a preponderance of the evidence that it was a photograph of the defendant that he himself posted on his Facebook page.
We also agree that the photograph of a masked man on the defendant's Facebook page was prejudicial to him. But even assuming, without deciding, that the photograph was not adequately authenticated and that its probative value was substantially outweighed by the danger of unfair prejudice, see Mass. G. Evid. § 403, we discern no substantial risk of a miscarriage of justice. A substantial risk of a miscarriage of justice occurs when an error, considered in the context of the entire trial, was likely to have materially influenced the jury's verdict. Commonwealth v. Randolph, 438 Mass. 290, 297-298 (2002). Here, the jury had an opportunity to view the surveillance video of a man matching the description of the robber with the crowbar using Cardoza's debit card and PIN number to obtain cash shortly after the robbery. The video, which we have reviewed, clearly showed the man's features, hair color, and facial hair from different angles. The jury compared the appearance of the man in the surveillance video to the defendant as he stood before them in the court room. Considering this powerful identification evidence together with the defendant's possession of an identical black hooded Champion sweatshirt at the time of his arrest, we cannot conclude that the Facebook photograph was likely to have materially influenced the jury's verdict.
3. Ineffective assistance of counsel. For these same reasons, we see no basis for a claim of ineffective assistance of counsel for failure to object or request limiting instructions. See id. at 296 ("ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not"). Nor was counsel ineffective for failure to request an instruction on identification when there was no direct identification of the defendant either prior to or during the trial. See Commonwealth v. Johnson, 470 Mass. 389, 395 (2015) (no identification instruction necessary where no "positive or partial identification of [the defendant]").
Judgments affirmed.